IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 3:10cr75-WHA |
| | ) | |
| JOHNNY BRUCE WILKERSON | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on defendant's motion to suppress (Doc. # 24) filed on July 16, 2010), and the government's response (Doc. # 26) filed July 28, 2010.  The court heard evidence on the motion on August 2, 2010.  For the reasons set out below, the motion is due to be denied.

Facts

On May 29, 2009, an investigator from Madison County, Alabama, advised officers with the Chambers County drug task force that they had two cooperating defendants who wanted to assist the Chambers County authorities with an investigation of the defendant, Johnny Bruce Wilkerson. The officers checked the reliability of the informants and determined that Tommy Dawson, chief of the Auburn Police Department, had worked with them in the past. The cooperating defendants were brought to Opelika, Alabama, where they met with Chambers County officers on May 30, 2009. One of the informants indicated that he had been purchasing drugs – anywhere from a quarter to half a kilo of powder cocaine – from the defendant every three to four weeks for almost twenty years, mostly at defendant's shop at 4931 31st Court in Valley, Alabama.

Officers determined that the next scheduled cocaine pickup was to be either that Saturday night or first thing Sunday morning, and that the informants expected ten to thirteen kilos of cocaine to be at the residence. The officers decided that Michael Parrish, a sergeant with the Chambers County Sheriff's Office and commander of the Chambers County Drug Task Force, would meet with Alabama circuit judge Steve Perryman on Sunday morning to seek an anticipatory search warrant for defendant's residence, to be executed after one of the confidential sources made a controlled buy from defendant. Officers sought an anticipatory warrant in part because they intended to use a large amount of money for the controlled drug purchase, and they desired to conduct a search relatively quickly after the buy so that they could recover the money.

Thereafter, on May 31, 2009, Sgt. Parrish obtained the warrant at issue in this case from Judge Perryman. The confidential sources and the officers then traveled to defendant's residence at 4923 31st Court. One of the informants was searched, provided with $7500 in buy money, and equipped with a "wire" so that officers could monitor the controlled buy. The informants successfully made a purchase of cocaine from defendant in the shop at the residence, exited the building, and turned the narcotics over to the officers. The officers then executed the warrant, searching the residence, the shop, and an "alternate residence," which later turned out to be located at a different address, 4953 31st Court.[1] They found, *inter alia*,

---

[1] Officers mistakenly searched the 4953 31st Court address, believing that it was part of the 4923 31st Court residence because, upon inquiry, the power company confirmed that the utilities for the alternate residence were in defendant's name and because they found the key to the padlocked 4953 31st Court building in the 4923 31st Court residence belonging to defendant. Officers located FedEx boxes, scales, and

drugs, firearms, currency, and security cameras during the search.

## Discussion

Defendant's motion to suppress asks the court to suppress evidence seized in the search of 4923 31st Court Street on several grounds: (1) the search warrant affidavit "does not present any confirmed information which would lead to probable cause to substantiate a search warrant," and, specifically, does not indicate that the information from the confidential sources was reliable; (2) "all of the 'triggering' events which were mandated and set forth in the affidavit ... actually occurred prior to the search"; and (3) the search warrant return and inventory incorrectly state that the return was made at 2:17 a.m. rather than 2:17 p.m. on June 3, 2009. Motion to Suppress at 2-3. In addition, defendant's motion requests suppression of evidence found in the shop located at 4923 31st Court Street, and at the alternate residence at 4953 31st Court Street, on the ground that neither were included in the property to be searched, as described in the warrant and affidavit. Id. At the suppression hearing in this case, defendant withdrew two of these claims.[2] The court will address the remaining issues.

---

a grocery bag containing baggies at the 4953 31st Court address.

[2] Specifically, defendant withdrew his contention that suppression should be granted because the triggering events occurred prior to the execution of the warrant (the court notes, in addition, that since the triggering events were *supposed* to occur before the warrant's execution, this contention has no merit). Further, defendant withdrew his objection to evidence seized at 4953 31st Court Street upon the government's representation that it does not intend to use any such evidence in the instant case. Accordingly, the court does not reach the suppression issue as to evidence seized at this address.

Reliability of the confidential sources

Defendant's contention that the search warrant affidavit does not establish the credibility of the informants or the information that they provided must be analyzed in accordance with Illinois v. Gates, 462 U.S. 213 (1983). In Gates, the Court set out a totality of the circumstances test for assessing whether or not probable cause supports a warrant for which an informant gives information. It indicated that "this totality-of-the-circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific 'tests' be satisfied by every informant's tip." Id. at 230-231 (citations and footnote omitted). The Court noted that

> an informant's "veracity," "reliability" and "basis of knowledge" are all highly relevant in determining the value of his report. We do not agree, however, that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case, which the opinion of the Supreme Court of Illinois would imply. Rather, as detailed below, they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place.

Id. at 230 (footnote omitted); see also United States v. Gonzalez, 969 F.2d 999, 1003 (11th Cir. 1992) ("[W]hile an informant's 'veracity,' 'reliability,' and 'basis of knowledge' are relevant factors in the probable cause analysis, corroboration of the details of an informant's tip by independent police work is of significant value.")

In the instant case, Sgt. Parrish's affidavit for the anticipatory search warrant alleged that "[p]rior to this request for a search warrant I have received information from sources

4

including police officers and informants that Johnny Bruce Wilkerson ... is possessing and selling cocaine from his residence .... The information received was that Mr. Wilkerson would have large quantities of cocaine brought to his residence and would sell smaller portions of the cocaine to various individuals." Government Exhibit 1. The affidavit went on to set out a "triggering event" – in this case, the delivery of cocaine to the confidential source at an outbuilding across the street from defendant's residence – which would provide probable cause to search the residence and the outbuilding. Id.

Thus, the probable cause to search supporting the warrant had two parts: (1) information from police and informants that defendant was selling cocaine from his residence, and (2) confirmation of that information through an anticipated controlled buy. With regard to the former, the issuing judge could reasonably presume the police officers to be reliable and knowledgeable sources without further confirmation. In addition, although the reliability of the other sources was not specifically discussed in the affidavit, the information offered by the sources appears to have been specific, first hand information concerning the delivery of large amounts of cocaine to defendant, his sales of smaller amounts of cocaine to individuals at his residence, and the fact that the usual site of the sales was in the outbuilding at the residence. Cf. Gates, 462 U.S. at 234 ("[E]ven if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case.").

5

Most important, officers were able to corroborate the sources' information immediately prior to executing the search warrant by making a controlled purchase from defendant. Thus, under the totality of the circumstances – given that such corroboration had to be forthcoming before any search were conducted – the judge was justified in relying on the reliability of the informants and in finding probable cause. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 238. A judge need have no more than a "substantial basis" for concluding that probable cause exists, and courts must give great deference to the [] judge's assessment of the facts presented to him or her. United States v. Moody, 977 F.2d 1425, 1431 (11th Cir. 1992); see also United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002)("[T]he affidavit must contain 'sufficient information to conclude that a fair probability existed that seizable evidence would be found in the place sought to be searched.'").

Time of Return

Defendant contends that the fact that the search warrant return incorrectly stated that the return was made at 2:17 a.m. rather than 2:17 p.m. on June 3, 2009, causes the search to be unconstitutional. The testimony elicited at the suppression hearing relating to this error was as follows:

6

>Q [Defendant's counsel]. On the return, you've got the return to the courthouse at two seventeen a.m. I'm assuming that's just a typo?
>A [Sgt. Parrish]. Yes.
>Q. Okay. The courthouse isn't open at two seventeen a.m., is it?
>A. No ma'am, it's not.
>Q. Okay.
>   The Court: What was the time it should have been noted as?
>The Witness: It was p.m. That was my doings.

Counsel for defendant conceded at the hearing that she could cite no case in support of her contention that the error rendered the search unconstitutional, and the court has found none. Here, it is undisputed that the return was made within twelve hours of the listed time, that the date of the return – some three days after the execution of the warrant – was accurate, and that the typographical error was unintentional. Defendant has shown no prejudice resulting from the mistake. Under such circumstances, the court cannot conclude that a technical error on the search warrant return violated either the Warrant Clause or defendant's Fourth Amendment right to be free from unreasonable searches and seizures. Cf. Cady v. Dombrowski, 413 U.S. 433, 449 (1973) (Finding that where certain items were lawfully seized, it was not constitutionally significant that they were not listed in the return of the warrant.).

Further, to the extent that defendant alleges that the typographical error violated Alabama law relating to warrant returns, it is clear that no such violation occurred. Section 15-5-12, Ala.Code 1975 provides that "[a] search warrant must be executed and returned to the judge or the magistrate by whom it was issued within 10 days after its date; if not

executed after such time, it is void." Ala.Code § 15-5-12; see also Ala.R.Crim.P. 3.11(b) (the return shall be made promptly to the issuing judge or magistrate). The Alabama Court of Criminal Appeals has determined that "[a]lthough § 15-5-12, Ala.Code 1975, clearly provides that a warrant is void if not executed in 10 days, it does not provide for the invalidation of the warrant upon its failure to be returned." State v. C.B.D., __ So.3d __, 2009 WL 3255173, 1 (Ala.Crim.App. 2009) (citation omitted). The court has "consistently stated that ministerial defects do not nullify other search-warrant procedures and ha[s] upheld such search warrants, absent a showing of prejudice." Id. at 2 (citing, *inter alia*, McCord v. State, 373 So.2d 1242, 1244 (Ala.Crim.App.1979) (where warrant was executed within the 10-day requirement it was not invalidated by lack of the magistrate's signature and a date on the return)); see also Donovan v. State, 359 So.2d 1181, 1183 (Ala.Cr.App. 1978) (Failure to return a warrant due to inadvertence did not invalidate the search; the return of an indictment is merely a ministerial act). In the instant case, the officer's failure to record the correct time on the return was clearly an inadvertent ministerial defect that did not prejudice defendant, and suppression is not warranted on this ground.

Similarly, even if the warrant in this case were somehow construed as the equivalent of a federal warrant because of the officers' involvement with the drug task force, Fed.R.Crim.P. 41 would not invalidate the search. "Ministerial violations of Rule 41, such as failing to leave either a copy of the search warrant or a receipt of items seized, are non-constitutional....Such non-constitutional violations justify suppression only where the

defendant is prejudiced by the violation or there is evidence that the violation was deliberate." United States v. Thompson, 263 Fed.Appx. 374, 379, 2008 WL 345369, 4 (4th Cir. 2008) (citations omitted). Again, the error in this case was clearly ministerial, and it resulted in no prejudice to defendant.

Search of the outbuilding

Defendant seeks suppression of evidence found in the shop located at 4923 31st Court Street on the ground that this outbuilding was not included in the property to be searched pursuant to the warrant. Under the Fourth Amendment, a search warrant must describe with particularity the place to be searched, and the persons or things to be seized. United States v. Johnson, 281 Fed.Appx. 909, 913, 2008 WL 2410215, 3 (11th Cir. 2008). A search conducted pursuant to a warrant is limited in scope by the terms of the warrant's authorization. Walter v. United States, 447 U.S. 649, 656 (1980).

In the instant case, the warrant authorized officers to search "[t]he premises known as the residence of Johnny Bruce Wilkerson, alias, located at 4923 31st Court, Valley, Chambers County, Alabama." Government Exhibit 1. "The search warrant is to include the premises described, which is more particularly described in this search warrant, the curtilage, any vehicles on the curtilage, any outbuildings, and the persons of Johnny Bruce Wilkerson, alias,...and any other John or Jane Doe located on the premises." Id.

Testimony at the hearing from Investigator William Young, a police officer for the City of Layette who was also assigned to the Chambers County Multicounty Jurisdictional Task

Force, and Sgt. Parrish established that the outbuilding at issue (referred to as the "shed" or "shop") was, in fact, located at 4923 31st Court. Accordingly, pursuant to the plain language of the warrant, officers had express authority to search the outbuilding, which was discussed in the warrant affidavit as the anticipated site of the controlled buy. See Maryland v. Garrison, 480 U.S. 79, 82 (1987) ("A literal reading of [the warrant's] plain language, as well as the language used in the application for the warrant, indicates that it was intended to authorize a search of the entire third floor."); United States v. O'Campo, 2010 2010 WL 2331182, 1 (11th Cir. 2010) ("Based on the plain language of the warrant, officers properly were authorized to seize the items which were to be used in the construction of a marijuana grow house.").

To the extent that defendant contends that, even though the outbuilding was located at 4923 31st Court, it was not actually within the curtilage of the residence on that property, this argument is without merit. "How far the curtilage and Fourth Amendment protection extends turns on 'whether an individual reasonably may expect that the area in question should be treated as the home itself.'" United States v. Hatch, 931 F.2d 1478, 1480 (11th Cir. 1991). The court applies four factors in resolving this question: "(1) the proximity of the area claimed to be curtilage to the home; (2) the nature of the uses to which the area is put; (3) whether the area is included within an enclosure surrounding the home; and, (4) the steps the resident takes to protect the area from observation." United States v. Taylor, 458 F.3d 1201, 1206 (11th Cir. 2006).

In this case, the outbuilding is separated from the main residence by a chain link fence

and a driveway or easement. The back door of the house is approximately 20 to 30 feet from the fence, and the fence is some 35 to 50 yards from the outbuilding. The uses to which the shop was put – other than the sale of drugs – were not addressed directly in testimony, but the warrant return reveals that the shop contained currency, firearms, three cameras and a surveillance monitor, bags of marijuana, and a flat screen television. Security cameras and a monitor, drugs, firearms, currency, and a flat screen television were also found in the residence. Investigator Young testified that one of the cooperating sources said that he had been purchasing drugs from the defendant every three to four weeks for almost twenty years, mostly at the shop.

    Testimony at the hearing also indicated that the outbuilding is not within the fence that encloses the house. However, the shop does appear from photographs (*e.g.*, Defendant's Exhibit 4, 6) to be part of a kind of compound or collection of structures, machinery, and equipment – the residence, the wooden fence, the outbuilding, a chain link fence, two trailers, a temporary shelter or awning, one or more barbeque grills, etc. – that relate to each other both through their proximity and their common association with the easement or driveway. The outbuilding is partially shielded from observation by a wooden privacy fence, and the court infers from items seized within that it was protected by security cameras.

    Based on these facts, the court concludes that the outbuilding was put to the same or many of the same uses as the residence since it contained the same kinds of items and equipment; that the shop was in active, long-term and frequent use by the resident of the

house for drug sales; that the outbuilding also appears to have been used for watching television and cooking out; that it abutted a driveway used for the residence as well; that it seems to be part of a compound or group of related structures and machinery which include the residence; and that defendant took steps to shield the outbuilding from observation and interference, and did so in substantially the same manner as he shielded the residence (that is, with fencing and security equipment). Thus, the outbuilding is within the curtilage of the home, and the search of the outbuilding was authorized by the warrant. See United States v. Nichols, 248 Fed.Appx. 105, 107 (11th Cir. 2007) ("Where a property consists of multiple structures, the external bounds of the curtilage is 'the outer walls of the extreme outbuildings of the curtilage' that 'mak[e] up the farm home.'");United States v. Berrong, 712 F.2d 1370, 1374 (11th Cir. 1983) ("The curtilage of the home is formed by the buildings 'constituting an integral part of that group of structures making up the farm home,' ... or 'the immediate domestic establishment' of the home ... . The 'outer limits of the curtilage' have been expressly defined to be 'the outer walls of the extreme outbuildings of the curtilage.'")(citations omitted).

## Conclusion

Accordingly, for the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that defendant's motion to suppress (Doc. # 24) be DENIED. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before September 1, 2010. Any objections filed must specifically

identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 18th day of August, 2010.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE